Kevin Mahoney (SBN 235367)
kmahoney@mahoney-law.net
Katherine J. Odenbreit (SBN 184619)
kodenbreit@mahoney-law.net
Morgan E. Glynn (SBN 303822)
mglynn@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, California 90802
Telephone (562) 590-5550
Facsimile (562) 590-8400

Shafiel A. Karim (SBN 291725)
shafiel@skarimlaw.com
**LAW OFFICE OF SHAFIEL A. KARIM**
17777 Center Court Drive, Suite 600
Cerritos, California 90703
Telephone (562) 653-6850
Facsimile (562) 285-9990

Attorneys for Plaintiff C&M Cafe LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C & M CAFE LLC, a California limited liability company, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KINETIC FARM, INC., a Delaware corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:        4:16-cv-04342-DMR<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>1.  Violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961 *et seq.*)<br>2.  Violation of Lanham Act (15 U.S.C. §§ 1051, *et seq.*)<br>3.  Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)<br>4.  Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)<br><br>Assigned to: Hon. Donna M. Ryu<br>Courtroom: 4 – 3ʳᵈ Floor<br><br>Complaint Filed: September 2, 2016<br>Trial Date: Not Yet Set<br><br>**(Jury Trial Demanded)** |

SECOND AMENDED CLASS ACTION COMPLAINT

1

**INTRODUCTION**

Plaintiff C & M CAFE LLC files this Second Amended Class Action Complaint ("SAC"), on behalf of itself and a Class of similarly situated persons and entities, against Defendant KINETIC FARM, INC., Defendant JAMES BUTTS, Defendant HENRY LEE, Defendant JEFFREY BYUN, Defendant ROSARIO GARNETT, Defendant ALAN SMALL, Defendant CHRIS TIMM, and Defendants DOES 1-50, inclusive (collectively, "Defendants"). Defendants devised and executed an identity theft scheme to confuse the public through a pattern of racketeering activity that diverted customers away from Plaintiff and the Class, resulting in unlawfully obtained profits from usurping restaurant delivery orders away from Plaintiff and the Class. Defendants constructively own and operate impostor websites that purport to be and continue to purport to be official websites of Plaintiff and the Class. In turn, Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961, *et seq.*), the Lanham Act (15 U.S.C. §§ 1101, *et seq.*), California's False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*), and California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

**PARTIES**

1.       Plaintiff C & M CAFE LLC ("C&M") is a limited liability company duly organized and existing under the laws of the State of California. C&M's principal place of business is located at 3400 Overland Avenue, Suites 103 and 104, Los Angeles, California 90034.

2.       Defendant KINETIC FARM, INC. ("Kinetic") is a corporation duly organized and existing under the laws of the State of Delaware. Kinetic's principal place of business is located at 210 Industrial Road, Suite 102, San Carlos, California 94070. Kinetic's agent for service of process in California is Mr. Jeffrey Byun located at 1765 East Bayshore Road, Suite 213, Palo Alto, California 94070; its agent for service of process in Delaware is VCorp Services, LLC located at 1811 Silverside Road, Wilmington, New Castle, Delaware 19810.

3.       Upon information and belief, Defendant JAMES BUTT ("Butt") is an individual resident of California. Upon further information and belief, Butt is a co-founder, member, and manager of Kinetic and knew or should have known about the illegal tactics Kinetic used and continues to use to grow its business injuring Plaintiff and the Class.

4.     Upon information and belief, Defendant HENRY LEE ("Lee") is an individual resident of California. Upon further information and belief, Lee is a co-founder, member, and manager of Kinetic and knew or should have known about the illegal tactics Kinetic used and continues to use to grow its business injuring Plaintiff and the Class.

5.     Upon information and belief, Defendant JEFFREY BYUN ("Byun") is an individual resident of San Francisco County and/or San Mateo County, California. Upon further information and belief, Byun is a co-founder, member, and manager of Kinetic and knew or should have known about the illegal tactics Kinetic used and continues to use to grow its business injuring Plaintiff and the Class.

6.     Upon information and belief, Defendant ROSARIO GARNETT is an individual resident of California.

7.     Upon information and belief, Defendant ALAN SMALL is an individual resident of California.

8.     Upon information and belief, Defendant CHRIS TIMM is an individual resident of California.

9.     C&M is unaware of the true names and capacities of all defendants in this action. C&M sues those unknown persons under the fictitious names DOES 1-50, inclusive. C&M will amend this Complaint with their true names and capacities once their identities have been ascertained.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action because it raises federal questions (28 U.S.C. § 1331) and satisfies the criteria of the Class Action Fairness Act, 28 U.S.C. § 1332.

11.     This Court has personal jurisdiction over Defendants. Defendants regularly and systematically conduct business in this judicial district. The alleged business practices described in the Complaint occurred in this judicial district. Defendants have sufficient minimum contacts with this judicial district through their use of the Internet, an instrumentality of interstate commerce. Accordingly, this Court's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant resides in this judicial district and a substantial part of the events, frauds, and pattern of racketeering activities giving

SECOND AMENDED CLASS ACTION COMPLAINT

3

1    rise to this action occurred in this judicial district.  Defendants' principal place of business is located in

2    this judicial district.

3                                     **STATEMENT OF FACTS**

4          13.    C&M is a fast casual restaurant with locations in West Los Angeles and the San Fernando

5    Valley. C&M is known for its gourmet menu items, eclectic menu item names (*e.g.*, "B.A.M" which is

6    an acronym for "Bada** Motherf*cker") and fun and playful atmosphere epitomized by its cartoon

7    chicken and monkey logo:

8

9

10

11                                    

12

13

14

15          14.    C&M actively advertises its food and restaurant through its official website located at

16    www.cmcafela.com ("Official Site") and social media.  Although food quality is unquestionably the

17    biggest draw for customers, like most small restaurants, C&M's success is also rooted in its customer

18    intimacy business philosophy.  C&M's staff is trained to attempt to establish a personal connection with

19    its customers in furtherance of that business philosophy.

20          15.    As part of its customer intimacy business philosophy, C&M also delivers its food directly

21    to customers.  C&M accepts delivery orders on the Official Site and by telephone.  C&M charges

22    customers an additional $3.00 for deliveries within a three-mile radius of its restaurants.    C&M

23    employees personally deliver these orders.

24    / / /

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT



16.     On or around April 22, 2015, C&M learned of the existence of www.candmcafe.com ("Impostor Site").  Defendants engaged in identity theft and falsely held out the Impostor Site as an official website of C&M.  The Impostor Site shared an alliteratively similar domain name—*cf.* "candmcafe.com" and "cmcafela.com" and C & M Cafe—and displayed C&M's trademarks, service marks, and copyrights.  The Impostor Site's sole purpose was to (1) confuse C&M's existing and prospective customers into believing it was an official website, (2) divert those existing and prospective customers away from the Official Site, (3) fraudulently acquire more users for Defendant KINETIC FARM, INC.'s OrderAhead smart phone application ("OrderAhead App"), and (4) profit from usurping a delivery sale from C&M by charging a different inflated price for its menu items.

/ / /



17.  The above screenshot of the Impostor Site is an altered version that prominently displayed the name "C&M Cafe" and accurately listed C&M's address.[1]  The sandwich displayed on that webpage is C&M's popular "Lil' Stacker," and was retrieved from a Yelp review authored by a C&M customer.[2]  Although the Impostor Site included a near verbatim reproduction of the C&M menu, it offered to sell C&M's menu at different and inflated prices, making those statements literally false.

18.  The Impostor Site differed in color palette and design to be sure, but it was so professional in appearance that a reasonable existing or prospective C&M customer could have and would have believe that it was official or had the imprimatur of C&M.  More important, the Impostor Site was accessible at the confusingly similar www.candmcafe.com domain name.

_____

[1] The street address listed shows C&M's previous address. Following a series of scathing articles describing the fraudulent character of the OrderAhead App, Kinetic altered many of the Impostor Sites to look less like the underlying official websites.  Todd Bishop, "Rogue OrderAhead websites altered to look less like official restaurant sites," GeekWire (May 14, 2015) *available at* http://www.geekwire.com/2015/rogue-orderahead-websites-altered-to-look-less-like-official-restaurant-sites/ (last visited Jan. 30, 2016).
[2] Lil' Stacker, *available at* http://www.yelp.com/biz_photos/c-and-m-cafe-los-angeles#VbpKzPa74d0zyMz68TOr3Q (last visited May 11, 2015).

SECOND AMENDED CLASS ACTION COMPLAINT

1   19. The mobile Impostor Site displayed C&M's trademarks, service marks, and copyrights vis-à

2   vis the logo and menu item names.  The mobile Impostor Site was so professional in appearance that a

3   reasonable existing or prospective customer could have and would have believed that it was official or

4   had the imprimatur of C&M.   More important, the mobile Impostor Site was accessible at the

5   confusingly similar www.candmcafe.com domain name.



**Official Site (Mobile)         Impostor Site (Mobile)         OrderAhead App**

20. Similarly, the OrderAhead App displays C&M's trademarks, service marks, and copyrights vis-

à-vis the logo and menu item names.  The OrderAhead App falsely claims that the "First Delivery [is]

free!" because C&M charges at least $3.00 for all deliveries.  The OrderAhead App is so professional

in appearance that a reasonable current or prospective C&M customer could and would believe that it

is official or has the imprimatur of C&M, especially because the OrderAhead App is accessible from

the confusingly similar www.candmcafe.com domain name.

21.    On April 27, 2015, C&M's counsel sent a cease and desist letter to Defendant ROSARIO

GARNETT ("Garnett"), the domain registrant of the Impostor Site, by First Class Mail. *See* Exhibit A.

SECOND AMENDED CLASS ACTION COMPLAINT

7

C&M's counsel was unable to confirm receipt of the electronic mail and the hardcopy was returned because Garnett's address listed on the domain registration did not exist. *See* Exhibit B. Registering a domain name with a fake address is a violation of the domain registration policies of the Internet Corporation for Assigned Names and Numbers ("ICANN").[3]

22.     On May 6, 2015, C&M learned of an article published by GeekWire describing Kinetic's identity theft scheme and reaffirming Garnett's connection with Kinetic.[4] Apparently, Garnett not only owns the Impostor Site but also owns "hundreds of domains" with names that are confusingly similar to other restaurants comprising the Class. *See* Exhibit C. GeekWire also confirmed that Garnett's address listed on the domain registration statements for each of the domains did not exist.

23.     In fact, it turns out that Garnett was not the only domain registrant working to divert website traffic away from the Class' websites and to the Kinetic's impostor sites. Upon information and belief, Kinetic's identity theft scheme also relied on Defendant CHRIS TIMM and Defendant ALAN SMALL to register multiple domain names that shared a confusingly similar name with that of an existing restaurant.[5] And like Garnett, the contact information listed on the domain registration statements was false in violation of ICANN policy.

24.     According to GeekWire, Kinetic failed to respond to an inquiry by the Washington State Attorney General following complaints of "hijacking" a Seattle restaurant's "online identity and diverting customers away from the restaurant's real website."[6] GeekWire further described Kinetic's misleading and deceptive practice of constructively owning and actually operating impostor websites that purport to be the official websites of the Class (collectively, "unofficial sites") as follows:

---

[3] About WHOIS, ICANN, *available at* http://whois.icann.org/en/about-whois (last visited Jul. 9, 2016).

[4] *See* Rogue restaurants sites raise questions about Y Combinator-backed OrderAhead delivery service, *available at* http://www.geekwire.com/2015/rogue-restaurant-sites-raise-questions-about-orderahead-the-y-combinator-backed-delivery-service/ (last visited May 6, 2015).

[5] *See* Thousands of Rogue Restaurant Websites Diverting Customers to OrderAhead, *available at* http://www.geekwire.com/2015/exclusive-thousands-of-rogue-restaurant-websites-diverting-customers-to-orderahead-deliveries/ (last visited May 7, 2015).

[6] OrderAhead ignores state Attorney General's inquiry into restaurants allegations of online hijacking *available at* http://www.geekwire.com/2015/orderahead-ignores-state-attorney-generals-inquiry-into-allegations-of-online-hijacking/ (last visited Jan. 31, 2016).

---

SECOND AMENDED CLASS ACTION COMPLAINT

Frequently, the unofficial sites outrank the official restaurant sites in search results, using savvy SEO techniques. In some cases, for example, the sites have been connected to the Google Local listings for the restaurants, ensuring that the OrderAhead sites are featured more prominently in search results …. They leverage multiple hosting providers but are all powered by a common infrastructure, pulling CSS, JavaScript and images from the same Amazon Web Services Cloudfront instance.[7]

25.       According to Bruce Michaux of Wild Ginger, a Seattle restaurant, "I have not heard of [Kinetic or the OrderAhead App] and we have no association with them whatsoever …. I would hate for anybody to be … co-opting our name [without customers knowing]. That's most upsetting."[8] Emily Yaw, a corporate accountant at Mel's Market in Seattle described the unofficial sites as "super shady" and added that she "had no idea this website even existed."[9]

26.       Similarly, Nikos Gyros, another Seattle restaurant, does not have a website and does not offer delivery to its customers.  However, Garnett is the registered owner of www.nikosgyros.net, an impostor site that purports to be the official website of Nikos Gyros, and directs users to order from Nikos Gyros online through Kinetic's OrderAhead App.  Alex Serpanos, owner of Nikos Gyros explained:  "[the unofficial site] has our family history, photos of the restaurant, a menu, but not with our pricing …. We have no agreement with [Kinetic] … [but] [t]hey were delivering our food …. I feel violated …. [The unofficial site] looks like ours.  It smells like ours.  It reads like ours, but it's not ours."[10]  Serpanos continues, "It misdirects the customer.  They think [the unofficial site is] actually our restaurant.  [Customers] would call the number, place an order, then [OrderAhead] would deliver our food to the customer without our knowledge or permission.  [Kinetic is] misrepresenti[ng] Nikos Gyros."[11]

27.       Indeed, once a customer places an order on the OrderAhead App, a Kinetic driver goes to the restaurant and personally places that customer's order.  Both the customer and the restaurant are completely unaware of the fact that (1) Kinetic, the impostor site, and the OrderAhead App are not

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Delivery Company Hijacks Nikos Gyros, *available at* http://www.magnoliavoice.com/2015/04/29/delivery-company-hijacks-nikos-gyros/ (last visited May 12, 2015).
[11] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT

1    affiliated with the restaurant, (2) the prices charged by Kinetic on the OrderAhead App are higher than

2    the restaurant's actual menu prices, and (3) the Kinetic driver is also not affiliated with the restaurant.

3    As far as the customer is concerned, the restaurant made the delivery; and as far as the restaurant is

4    concerned, the Kinetic driver was the end-customer.

5      28.  C&M is informed and believes that Kinetic's drivers frequently botch customers'

6    orders.[12]

7      29.  Below is a table comparing C&M's actual prices with Kinetic's prices on the OrderAhead

8    App:

| Menu Item Name | C&M Café's Actual Price | Impostor Site/ OrderAhead Price | Difference (Dollars and Percent) |
|---|---|---|---|
| Plain Jane | $7.95 | $9.15 | $1.20 or 15% |
| We Bought The Farm | $10.25 | $11.80 | $1.55 or 15% |
| When In Rome | $10.25 | $11.80 | $1.55 or 15% |
| Mmmmmmmm....Motor Market Marvel | $9.95 | $10.30 | $0.35 or 4% |
| Grilled Cheese Heaven | $8.95 | $10.30 | $1.35 or 15% |
| Fabulous Disaster | $10.25 | $11.80 | $1.55 or 15% |
| What Should Have Been | $10.95 | $12.60 | $1.65 or 15% |
| Mantastic | $10.95 | $12.60 | $1.65 or 15% |
| P.B.R. (Pork Belly Rules!) | $11.25 | $12.95 | $1.70 or 15% |
| Blonde Bomb | $10.25 | $11.80 | $1.55 or 15% |
| Many Thanks | $10.25 | $11.80 | $1.55 or 15% |
| The Better B.L.T. | $10.25 | $11.80 | $1.55 or 15% |
| 86'ED | $10.95 | $12.60 | $1.65 or 15% |
| Knock-Out Punch | $3.00 | $4.60 | $1.60 or 53% |
| Don't Let Your Meat Loaf | $10.95 | $12.60 | $1.65 or 15% |
| Sorry About It | $10.95 | $12.60 | $1.65 or 15% |
| Here's the Beef | $10.95 | $12.60 | $1.65 or 15% |

  30.  Silicon Valley has long had a penchant for disrupting incumbent businesses and

industries with innovative technologies. While the marketplace welcomes ethical innovation, unethical

business practices guised as innovations are neither disruptive nor welcomed. Although it is legal to

---

[12] C&M is informed and believes that several of its orders that were later determined to have originated from the OrderAhead App were incorrectly ordered by Kinetic's drivers, and subsequently C&M's end-customers received the wrong order from Kinetic thinking that C&M was responsible for the snafu instead of Kinetic, the real culprit.

SECOND AMENDED CLASS ACTION COMPLAINT

10

1    buy something for one dollar and sell it for two, it is not legal to buy something for one dollar and falsely

2    advertise that thing in an effort to sell it for two.

3        31.    Kinetic's identity theft scheme and use of the Impostor Site and unofficial sites was not

4    and is not innovative or disruptive.  Instead, Kinetic's constructive ownership and actual operation of

5    the Impostor Site and unofficial sites are plain illegal and represent a pattern of racketeering activity

6    because the tactic aims to confuse the public, divert customers away, and profit from usurping delivery

7    sales of restaurants.  Such business tactics are clearly illegal and do not embody any of the innovative

8    entrepreneurial spirit of Silicon Valley or its legends such as David Packard and Steve Jobs.

9        32.    The Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §§ 1961, *et*

10   *seq.*)("RICO") states:

         It shall be unlawful for any person employed by or associated with any enterprise
11       engaged in, or the activities of which affect, interstate or foreign commerce, to conduct
         or participate, directly or indirectly, in the conduct of such enterprise's affairs through a
12       pattern of racketeering activity or collection of unlawful debt.

13   18 U.S.C. § 1962(c).  The phrase "racketeering activity" includes "frauds and swindles" as defined in

14   18 U.S.C. § 1341, "wire fraud" as defined in 18 U.S.C. § 1343, the use of "any facility in interstate

15   commerce" including the Internet for "any unlawful activity" as defined by 18 U.S.C § 1952, and

16   "traffics in goods or services and knowingly uses a counterfeit mark on or in connection with such goods

17   or services" as defined by 18 U.S.C. § 2320.  *See* 18 U.S.C. § 1961(1).  A "pattern of racketeering

18   activity" requires "two acts of racketeering activity." 18 U.S.C. § 1961(5).

19

20       33.    The Lanham Act (15 U.S.C. § 1125) prohibits trademark and service mark infringement

21   as well as unfair competition.  Specifically, it is unlawful to use any:

22

23       word, term, name, symbol, or device, or any combination thereof, or any false
         designation of origin, false or misleading description of fact, or false or misleading
24       representation of fact, which … is likely to cause confusion, or to cause mistake, or to
         deceive as to the affiliation, connection, or association of such person with another
25       person, or as to the origin, sponsorship, or approval of his or her goods, services, or
         commercial activities by another person ….
26

27   15 U.S.C. § 1125(a)(1).  The Lanham Act also expressly prohibits cyberpiracy: "A person shall be

28   liable in a civil action by the owner of a mark … that person … has a bad faith intent to profit from that

mark … and registers, traffics in, or uses a domain name that … is identical or confusingly similar" to a distinctive or famous mark." 15 U.S.C. § 1125(d)(1)(A). The Lanham Act permits a plaintiff to opt for statutory damages instead of actual damages. *See* 15 U.S.C. § 1117(c) and (d).

34.     Similarly, the California False Advertising Law ("FAL")(Cal. Bus. & Prof. Code §§ 17500, *et seq.*) prohibits the dissemination of any statement that is "untrue or misleading … or which by the exercise of reasonable care should be known to be untrue or misleading…." The Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) prohibits any "unlawful" or "fraudulent business act or practice and … deceptive, untrue or misleading advertising …." Kinetic's use of the Impostor Site and unofficial sites violate the FAL. In turn, Kinetic's use of the Impostor Site and unofficial site also violate the "unlawful" and "fraudulent" prongs of the UCL.

35.     Kinetic's identity theft scheme and use of the Impostor Sites and unofficial sites rises to the level of a "racketeering activity" because it is illustrative of Kinetic's modus operandi of attempting confuse consumers as to the source during the Class Period evidenced by the myriad stories published by GeekWire and others, it constitutes a "pattern of racketeering activity" under RICO for "frauds and swindles" as well as "wire fraud."

36.     C&M and the Class have been injured by Kinetic's misleading, deceptive, unlawful, business practices, and pattern of racketeering activity. Kinetic has employed unethical, unscrupulous, and oppressive business practices violative of state and federal law. On behalf of itself and others similarly situated, C&M seeks declaratory relief, injunctive relief, equitable relief, restitution, treble monetary damages, attorneys' fees and costs, and all other remedies this Court deems just and proper.

## RICO ALLEGATIONS

37.     Kinetic conducted substantial business throughout the State of California as well as the the District of Columbia, State of New York, State of Virginia, and State of Washington.[13] At all relevant times, Garnett, Defendant ALAN SMALL, and Defendant CHRIS TIMM acted for on behalf

---

[13] *See* Exhibit C. Numerous unofficial site domain names are confusingly similar to restaurants in the District of Columbia, State of New York, State of Virginia, and State of Washington. For example,

SECOND AMENDED CLASS ACTION COMPLAINT

12

1   of Kinetic in undertaking the misleading, deceptive, unlawful, business practices, and pattern of

2   racketeering activity.

3      38.        Defendants are, individually and collectively, an "enterprise" within the meaning

4   of 18 U.S.C. § 1961(4).

5      39.        Defendants engaged in and continue to engage in activities that affect interstate

6   commerce because it involved commercial activities across state lines through their use of the Internet

7   and because it is well settled that restaurants affect interstate commerce. *See*, *e.g.*, *Katzenbach v.*

8   *McClung*, 379 U.S. 294 (1964).

9      40.        Upon information and belief, Defendant exercised substantial control over

10   Garnett, Defendant ALAN SMALL, and Defendant CHRIS TIMM by virtue of the fact that their various

11   domain names all pointed to the OrderAhead App, which contained the actual menus—save for the

12   actual prices—of C&M and the proposed Class.

13      41.        Kinetic also exercised substantial control over the OrderAhead App through its

14   ownership and development of the applications underlying software and features and deceptive,

15   misleading, and unlawful benefits.

16      42.        Defendants knowingly and willingly participated in an identity theft scheme to mislead

17   restaurant patrols into believing that its unofficial sites were the official websites of C&M and the

18   proposed Class during the Class Period for the purpose of (1) confuse C&M's and the proposed Class'

19   existing and prospective customers into believing it was an official website, (2) divert those existing and

20   prospective customers away from the Official Site, (3) fraudulently acquire more users for OrderAhead

21   App, and (4) profit from usurping a delivery sale from C&M and the proposed Class by charging a

22   different inflated price for its menu items.

23      43.        More specifically, Defendants knowingly, willfully, and unlawfully conducted or

24   participated, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering

25   activity within the meanings of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). In particular, Defendants

26   knowingly, willfully, and unlawfully engaged in fraudulent activity and wire fraud in violation of 18

27   U.S.C. §§ 1341 and 1343. Defendants' racketeering activity was made possible by the regular and

28   repeated use of the OrderAhead App.

1    44.    Defendants committed multiple acts of racketeering constituting a pattern of racketeering

2    activity, including aiding and abetting racketeering activity, as alleged in this First Amended Class

3    Action Complaint.

4    45.    Defendants' pattern of racketeering activity was not isolated. Instead, their pattern of

5    racketeering activity was and continues to be related insofar that it has the same or similar purposes and

6    results, participants, victims, and methods. Defendants' "purposes" and "methods" sought to confuse

7    and mislead the public through their use of the Impostor Sites and the unofficial sites. These "purposes"

8    and "methods" were and are an effort to result in the diversion of delivery orders from C&M and the

9    Class, unlawfully profit from those diverted delivery orders, and acquire more users for the OrderAhead

10   App, a network effect for Kinetic. The victims of Defendants' pattern of racketeering activity were and

11   continue to be C&M and the proposed Class.

12   46.    In devising and executing its scheme of a pattern of racketeering activity, Defendants

13   committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343.

14   47.    Defendants violated 18 U.S.C. § 1341 because they devised and knowingly carried out a

15   material scheme or artifice to defraud or to obtain money by means of materially false or fraudulent

16   pretenses, representations, promises, or omissions of material fact. Specifically, Defendants violate 18

17   U.S.C. § 1341 because the Impostor Site and the unofficial sites use confusingly similar domain names

18   as the official website or the restaurant's actual name, offer to sell the restaurant's food at inflated prices

19   without disclosing that fact, and fail to conspicuously disclose the fact that the Impostor Site or the

20   unauthorized sites are completely unrelated to C&M or the proposed Class.

21   48.    Defendants also violated 18 U.S.C. § 1343 through its fraudulent use of interstate wires

22   and other interstate electronic media (*i.e.*, the Internet, the Impostor Site, the unofficial sites, and the

23   OrderAhead App). In particular, Defendants disseminated or caused to be disseminated fraudulent

24   information through the Internet to (1) confuse C&M's and the proposed Class' existing and prospective

25   customers into believing it was an official website, (2) divert those existing and prospective customers

26   away from the Official Site, (3) fraudulently acquire more users for OrderAhead App, and (4) profit

27   from usurping a delivery sale from C&M and the proposed Class by charging a different inflated price

28   for its menu items.

SECOND AMENDED CLASS ACTION COMPLAINT

1

2

**CLASS ALLEGATIONS**

3        49.        C&M brings this action as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3)

4    of the Federal Rules of Civil Procedure on behalf of a proposed Class defined as follows:

5            All persons and entities that own or operate a restaurant in the United States that have
             been victimized by Defendants' use of unofficial sites of those restaurants to confuse the
6            public, divert customers, and profit from the falsely advertised delivery sales of that
             restaurant's food from 2011 to the present.

7        50.        The Class specifically excludes any officers, directors, or employees of Defendants, any

8    judge assigned to hear this case or that judge's spouse or family members, any employees of this Court,

9    and any jurors selected to hear this case.

10

11                        **Numerosity of the Class**

12                        **(Fed. R. Civ. P. § 23(a)(1))**

13        51.        The precise number of members of the Class is currently unknown to C&M.  However,

14    C&M is informed and believes that there are hundreds if not thousands of putative members of the Class

15    nationwide.    The Class is so numerous their individual joinder to this action is impracticable.

16    Accordingly, the class action mechanism is a superior form of adjudication rather than individual

17    adjudication.

18        52.        The community of interest among the Class is well defined and the proposed Class is

19    ascertainable from objective criteria.    The identities of Class members can be ascertained through

20    Kinetic's business records or public domain registration records or both.  Class members can be notified

21    of this action by mail or published notice.  If necessary, the Court can also redefine the Class.

22                **Predominance of Common Questions of Fact and Law**

23                        **(Fed. R. Civ. P. § 23(a)(2))**

24        53.        Common questions of law and fact predominate over the individual issues in this case.

25    These common questions of law and fact exist for all members of the Class.  Defendants have engaged

26    in a common course of misleading, deceptive, unethical, unscrupulous, and oppressive business conduct

27    that has injured C&M and members of the Class in nearly identical ways.  Defendants' business practices

28    have given rise to the legal rights sought by C&M on behalf of itself and the members of the Class.

---

SECOND AMENDED CLASS ACTION COMPLAINT

15

1    These nearly identical rights include remedies that arise from statutory and common law violations.

2    C&M's interests do not deviate from or contradict with the interests of the Class. The common questions

3    of law and fact include:

4          a.    Whether Defendants violated 18 U.S.C. § 1961(1) by constructively owning and actually

5    operating unofficial sites that victimized restaurants in the Class in an attempt to confuse the public,

6    divert customers away, and profit from the delivery sales of falsely advertised restaurant food causing

7    the Class injury.

8          b.    Whether Defendants violated 18 U.S.C. § 1962(c) by constructively owning and actually

9    operating unofficial sites that victimized restaurants in the Class in an attempt to confuse the public,

10   divert customers away, and profit from the delivery sales of falsely advertised restaurant food causing

11   the Class injury.

12         c.    Whether Defendants violated the prohibition against frauds or swindles under 18 U.S.C.

13   § 1341 by constructively owning and actually operating unofficial sites that victimized restaurants in

14   the Class in an attempt to confuse the public, divert customers away, and profit from the delivery sales

15   of falsely advertised restaurant food causing the Class injury.

16         d.    Whether Defendants violated the prohibition against wire fraud under 18 U.S.C. § 1343

17   by constructively owning and actually operating unofficial sites that victimized restaurants in the Class

18   in an attempt to confuse the public, divert customers away, and profit from the delivery sales of falsely

19   advertised restaurant food causing the Class injury.

20         e.    Whether Defendants violated the false designation of origin proscription of 15 U.S.C. §

21   1125(a)(1)(A) by constructively owning and operating unofficial sites that victimized restaurants in the

22   Class in an attempt to confuse the public, divert customers away, and profit from the delivery sales of

23   falsely advertised restaurant food causing the Class injury.

24         f.    Whether Defendants violated the cyberpiracy proscription of 15 U.S.C. § 1125(d) by

25   constructively owning and operating unofficial sites that victimized restaurants in the Class in an attempt

26   to confuse the public, divert customers away, and profit from the delivery sales of falsely advertised

27   restaurant food causing the Class injury.

28

SECOND AMENDED CLASS ACTION COMPLAINT

1

g.      Whether Defendant violated the unfair competition proscription of the Lanham Act by

2   constructively owning and operating unofficial sites that victimized restaurants in the Class in an attempt

3   to confuse the public, divert customers away, and profit from the delivery sales of falsely advertised

4   restaurant food causing the Class injury.

5

h.      Whether Defendants violated the False Advertising Law (Cal. Bus. & Prof. Code

6   §§ 17500, *et seq.*) by constructively owning and actually operating unofficial sites that victimized

7   restaurants in the Class in an attempt to confuse the public, divert customers away, and profit from the

8   delivery sales of falsely advertised restaurant food causing the Class injury.

9

i.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code

10  §§ 17200, *et seq.*) by violating the Racketeering Influenced Corrupt Organizations Act (18 U.S.C.

11  §§ 1961, *et seq.*).

12

j.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code

13  §§ 17200, *et seq.*) by violating the prohibition against frauds and swindles under 18 U.S.C. § 1341.

14

k.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code

15  §§ 17200, *et seq.*) by violating the prohibition against wire fraud under 18 U.S.C. § 1343.

16

l.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code §§

17  17200, *et seq.*) by violating the false designation origin proscription of 15 U.S.C. § 1125(a)(1)(A).

18

m.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code §§

19  17200, *et seq.*) by violating the cyberpiracy proscription of 15 U.S.C. § 1125(d).

20

n.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code §§

21  17200, *et seq.*) by violating the unfair competition proscription of the Lanham Act (15 U.S.C. § 1051,

22  *et seq.*).

23

o.      Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code

24  §§ 17200, *et seq.*) by violating the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*).

25

p.      Whether Defendants violated the unfair prong of the Unfair Competition Law (Cal. Bus.

26  & Prof. Code §§ 17200, *et seq.*) by constructively owning and actually operating unofficial sites

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT

1    that victimized the restaurants in the Class in an attempt to confuse the public, divert customers away,

2    and profit from the delivery sales of falsely advertised restaurant food causing Plaintiff and the Class

3    injury.

### Typicality
### (Fed. R. Civ. P. § 23(a)(3))

6    54.    C&M is a member of the Class and presents causes of actions that are typical of the

7    claims that would be made by the other members of the Class.  Similar to the Class, C&M's customers

8    associate its brand, food, and restaurant with its trademarks, service marks, and copyrights (*i.e.*, menu

9    item names and logo).

10   55.    In this Complaint, C&M alleges on behalf of itself and the Class that Defendants' have

11   violated RICO, the FAL, and UCL by co-opting and misappropriating those trademarks, service marks

12   and copyrights for the purposes of confusing the public and diverting customers away in an attempt to

13   profit from the delivery sales of falsely advertised restaurant food causing the Class injury.  All members

14   of the Class have been injured in nearly identical ways by Defendants' pattern of racketeering activity,

15   unethical, unscrupulous, oppressive, misleading, deceptive, and unlawful business practices.

16   56.    Specifically, C&M and the Class have lost profits as a result of Defendants' pattern

17   racketeering activity unlawful business practices.  Defendants' unethical, unscrupulous, oppressive,

18   misleading, deceptive, and unlawful misconduct serve as the basis for the material facts that proximately

19   caused injury to C&M and all other members of the Class, satisfying the objective test for materiality

20   on a class-wide basis.

### Adequacy
### (Fed. R. Civ. P. § 23(a)(4))

57.    C&M will fairly and adequately represent the interest of all members of the Class and

will protect the interests of all members of the Class.  C&M has retained attorneys who are competent

in the prosecution of complex civil litigation, specifically including class actions.

### FIRST CAUSE OF ACTION
### Violation of Racketeering Influenced Corrupt Organization Act
### 18 U.S.C. §§ 1961, *et seq.*

---

SECOND AMENDED CLASS ACTION COMPLAINT

58.    C&M realleges each and every allegation made above and incorporates it by reference here, and further alleges as follows:

59.    18 U.S.C. § 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

60.    At all relevant times, Defendants were "persons" under 18 U.S.C. § 1961(3) because they were "capable of holding a legal or beneficial interest in property."

61.    At all relevant times, Defendants were an "enterprise" under 18 U.S.C. § 1961(4) because they were a group of individuals and a corporation.

62.    Defendants conducted and participated in the pattern of racketeering activity by the "enterprise," as defined by 18 U.S.C. § 1961(5) through numerous and repeated uses of frauds and swindles and wire fraud prohibited by 18 U.S.C. §§ 1341 and 1343 respectively.  The numerous and repeated use of frauds and swindles and wire fraud were violations of 18 U.S.C. § 1962(c).

63.    Defendants individually and collectively engaged in the pattern of racketeering activity prohibited by 18 U.S.C. § 1962(c) and also individually and collectively aided and abetted the commission of the racketeering activity through numerous repeated frauds and swindles and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

64.    Defendants' numerous repeated frauds and swindles and wire fraud constitute predicate acts of racketeering within the meaning of 18 U.S.C. § 1961(1).

65.    Defendants violated 18 U.S.C. § 1341 because they devised a scheme or artifice to defraud the American restaurant going public of money or property by means of false or fraudulent pretenses, representations, or promises.

66.    Defendants violated 18 U.S.C. § 1343 by transmitting and receiving, or causing to be transmitted or received, materials by wire for the purpose of executing the scheme, which amounts to a material scheme to defraud and obtain money on false pretenses, misrepresentations, promises.  The materials transmitted and/or received including but are not limited to customer names, addresses, credit card information, and order histories and preferences.

---

SECOND AMENDED CLASS ACTION COMPLAINT

19

67.     Defendants knowingly and intentionally made these material misrepresentations. Alternatively, Defendants knew or recklessly disregarded the fact that these material misrepresentations were being made on behalf of the enterprise.

68.     Defendants obtained money and property belonging to C&M and the proposed Class as a result of these violations.  C&M and the proposed Class have been injured in their business and property as a result of Defendants' overt acts of frauds and swindles and wire fraud vis-à-vis the pattern of racketeering activity.

69.     C&M's and the proposed Class' injuries were directly and proximately caused by Defendants' pattern of racketeering activity.

70.     Pursuant to 18 U.S.C. § 1964(c), C&M is entitled to bring this RICO claim to recover treble monetary damages, the costs of this action, and reasonable attorneys fees for itself and the proposed Class.  Accordingly, Defendants are liable to C&M and the proposed Class for three (3) times their actual damages as proved at trial plus interest, costs of the action, and reasonable attorney's fees.

**SECOND CAUSE OF ACTION**
**Violation of Lanham Act**
**15 .S.C. § 1051,** *et seq.*

71.     C&M realleges each and every allegation made above and incorporates it by reference here, and further alleges as follows:

72.     The Lanham Act prohibits false designation of origin, cyberpiracy, and unfair competition.  The Lanham Act prohibits using any words, terms, or names that are likely to confusion. Whether the confusion led to an actual sale is irrelevant; mere initial interest confusion is sufficient. *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999)(infringement designed to capture initial consumer interest is infringement even if no actual sale completed). Similarly, registering and using a domain name that is "identical or confusingly" similar to existing marks in use is a violation of 15 U.S.C. § 1125(d).  Finally, the Lanham Act generally prohibits unfair competition. *See, e.g.*, *Beech-Nut, Inc. v. Warner-Lambert Co.*, 480 F.2d 801 (2d Cir. 1973); *PIC Design Corp. v. Sterling Precision Corp.*, 231 F. Sup. 106 (S.D.N.Y. 1966).

73.     Kinetic's identity theft, constructive ownership and actual operation of the Impostor Site, unofficial sites, and the OrderAhead App, infringed on Plaintiff's and the Class' respective marks used

1  in commerce in violation of the false designation of origin proscription of 15 U.S.C. § 1125(a)(1)(A).
2  Kinetic's identity theft, Impostor Site, unofficial sites, and OrderAhead App, were designed to create
3  initial interest confusion amongst customers.  Kinetic's scheme was designed to confuse the public,
4  divert customers away, and profit from the delivery sales of falsely advertised restaurant food causing
5  Plaintiff and the Class injury.

6      74.      Similarly, Kinetic's identity theft, constructive ownership and actual operation of the
7  Impostor Site, unofficial sites, and the OrderAhead App, violated the cyberpiracy proscription of 15
8  U.S.C. § 1125(d).  Defendants registered and used or operated domain names that are alliteratively
9  similar to Plaintiff's and the Class's respective business and domain names in an effort to confuse the
10  public, divert customers away, and profit from the delivery sales of falsely advertised restaurant food
11  causing Plaintiff and the Class injury.

12     75.      Finally, Kinetic's identity theft, constructive ownership and actual operation of the
13  Impostor Site, unofficial sites, and the OrderAhead App, violated the unfair competition provision of
14  the Lanham Act.  Defendants engaged in business acts and practices that infringed Plaintiff's and the
15  Class' marks used in commerce.  Defendants also mislead and deceived the public by registering and
16  used or operated domain names that are alliteratively similar to Plaintiff's and the Class' respective
17  business and domain names in an effort to confuse the public, divert customers away, and profit form
18  the delivery sales of falsely advertised restaurant food causing Plaintiff and the Class injury.

19     76.      On behalf of itself and the Class, Plaintiff seeks declaratory relief, injunctive relief, and
20  opts for statutory damages pursuant to 15 U.S.C. § 1117 for all Lanham Act violations, as well as all
21  other remedies this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***

24     77.      C&M realleges each and every allegation made above and incorporates it by
25  reference here, and further alleges as follows:

26     78.      California's False Advertising Law ("FAL") prohibits the dissemination of any statement
27  that is "untrue or misleading…or which by the exercise of reasonable care should be known to be untrue
28  or misleading…so advertised." Cal. Bus. & Prof. Code §§ 17500, *et seq.*

79.     Kinetic's identity theft, constructive ownership and actual operation of the Impostor Site, unofficial sites, and the OrderAhead App, Kinetic violated the FAL.  In particular, Kinetic disseminated two classes of untrue or misleading information.  First, Kinetic mislead reasonable customers into believing that the Impostor Site, unofficial sites, and the OrderAhead App were authentic.  Second, Kinetic disseminated untrue prices for C&M's and the Class' menu items.  Kinetic published different inflated prices in an attempt to further profit from its usurpation of C&M's and the Class' delivery sales.

80.     Kinetic's "untrue or misleading" statements proximately caused C&M and the Class economic injury in the form of lost profits.  Specifically, C&M and the Class lost the opportunity to generate delivery fee revenue.  Additionally, C&M and the Class suffered from the loss of goodwill that is associated with confusion in the marketplace caused by Kinetic's different inflated pricing.  In turn, that confusion adversely affected C&M's and the Class' goodwill, caused dilution by tarnishment of its marks, and invariably reduced its customer lifetime value for its current and prospective customers.

81.     On behalf of itself and the Class, C&M seeks damages, declaratory and injunctive relief, attorneys' fees and costs, and other remedies this Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Violation of Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

82.     C&M realleges each and every allegation made above and incorporates it by reference here, and further alleges as follows:

83.     California's Unfair Competition Law ("UCL") prohibits any "unlawful" or "fraudulent" business act or practice and…deceptive, untrue or misleading advertising…."  (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

84.     On the other hand "unfair" competition is any business practice that is likely to "deceive" customers.  *See Gran v. California Bench Co.*, 76 Cal. App. 2d 706, 707-708 (1946)("Universal test is whether public is likely to be deceived");  *People v. Dollar Rent-A-Car Systems, Inc.*, 211 Cal. App. 3d 119, 129 (UCL is "broadly interpreted to bar all ongoing wrongful business activity in any context in which it appears");  *Wolfe v. State Farm Fire & Casualty Ins. Co.*, 46 Cal. App. 4th 554, 561 (1996)("An

1    action for unfair trade practices … arises when a business practice 'offends an established public policy

2    or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

3    customers."); *Klein v. Earth Elements, Inc.* 59 Cal. App. 4th 965, 970 (1997)(UCL enjoins "deceptive

4    or sharp practices").

5         85.     By constructive owning and actually operating the Impostor Site, unofficial sites, and the

6    OrderAhead App, Kinetic violated RICO and the FAL, which in turn, is also a predicate violation of the

7    UCL.

8         86.     Kinetic's business practices are also unfair.  Kinetic's identity theft, use of the Impostor

9    Site, unofficial sites, and the OrderAhead App to confuse the public, divert customers, and profit from

10   the delivery sales of that restaurant's food is unethical, unscrupulous, oppressive, deceptive, and sharp.

11        87.     To determine whether or not the Impostor Site or the unofficial sites are not authentic, a

12   customer would have to conduct a WHOIS search to learn the name of the domain registrant.  A

13   customer would also have to suspect that the prices published on the Impostor Site and the unofficial

14   sites are actually different or inflated compared to that restaurant's actual menu prices.  C&M's and the

15   Class' customers have been duped by Kinetic's sharp business practices, and C&M's and the Class'

16   current and prospective customers will almost inexorably be duped by Kinetic's sharp business practices

17   going forward.

18        88.     On behalf of itself and the Class, C&M seeks damages, declaratory and injunctive relief,

19   attorneys' fees and costs, and other remedies this Court deems just and proper.

20        **PRAYER FOR RELIEF**

21        C&M, on behalf of itself and the Class, prays and respectfully requests recovery from

22   Defendants, jointly and severally, for the following:

23        a.     Declaratory relief holding Kinetic liable for its misleading, deceptive, and unlawful

24             conduct;

25        b.     Injunctive relief ordering Kinetic from immediately ceasing and desisting from

26             engaging in the misconduct;

27        c.     Transfer, at no cost to C&M and the Class, of the infringing domains to the owners of

28             the marks upon which the domain names infringe;

SECOND AMENDED CLASS ACTION COMPLAINT

1    d.    Treble monetary damages including compensatory, consequential, incidental, and

2          statutory damages where applicable, inclusive of interest at the maximum legal rate;

3    e.    C&M's attorneys' fees and costs upon prevailing.

4    On behalf of itself and the Class, C&M demands a trial by jury for all triable claims.

5                                    Respectfully submitted,

6                              By:

7
     Dated:  August 9, 2016              Kevin Mahoney
8                                        Katherine Odenbreit
                                         Morgan E. Glynn
9                                        Mahoney Law Group, A.P.C.
                                         249 E. Ocean Blvd., Ste. 814
10                                       Long Beach, CA  90802
                                         Tel. (562) 559-5550
11                                       Fax (562) 559-8400

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

SECOND AMENDED CLASS ACTION COMPLAINT