UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C&M CAFE,<br><br>        Plaintiff,<br><br>    v.<br><br>KINETIC FARM, INC.,<br><br>        Defendant. | Case No. 16-cv-04342-WHO<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Dkt. No. 21 |

**INTRODUCTION**

Plaintiff C&M Café ("C&M") alleges defendants Kinetic Farm, Inc. ("Kinetic"), Henry Lee, Jeffrey Byun, Rosario Garnett, Alan Small, Chris Timm, and other unknown defendants (collectively "defendants") enacted an identity theft scheme to confuse the public, divert customers away from C&M and other restaurants, and profit from elevated prices. It brings claims individually and on behalf of a class of similarly situated restaurants under (1) the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq.; (2) the Lanham Act, 15 U.S.C. §§ 1101 et seq.; (3) California's False Advertising Law, Cal. Bus. & Prof. Code §§17500 et seq.; and (4) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. Defendants Kinetic, Lee, and Byun move to dismiss the RICO claim, arguing that C&M failed to sufficiently plead a RICO violation because it failed to (1) allege a RICO "enterprise" distinct from a RICO person, (2) allege facts indicating participation in the enterprise by defendants Byun or Lee, (3) plead wire fraud with the requisite particularity, and (4) plead proximate causation of legally cognizable injuries. Motion to Dismiss ("Mot.") (Dkt. No. 21) at 2-3.

I conclude that C&M adequately pleaded the existence of a distinct RICO enterprise and RICO persons, mail and wire fraud, and proximate causation of its injuries, but failed to

adequately plead the participation of defendants Byun and Lee. Defendants' motion to dismiss is GRANTED with regards to defendants Byun and Lee and is DENIED with regards to the remaining defendants.

## BACKGROUND

C&M is a "fast casual" restaurant with locations in West Los Angeles and the San Fernando Valley. Second Amended Complaint ("SAC") ¶ 13, (Dkt. No. 11). It has an official website located at www.cmcafela.com as well as various social media accounts. *Id.* ¶ 14. In addition to serving food at its locations, C&M delivers food for a $3.00 charge via its official website and through direct phone orders. *Id.* ¶ 15. C&M employees personally deliver these orders to locations within a three mile radius. *Id.* ¶ 15.

On April 22, 2015, C&M learned of a website, candmcafe.com, which contained C&M trademarks, service marks, and copyrights. *Id.* ¶ 16. The imposter site displayed C&M's menu items and a photo from a Yelp review submitted by a C&M customer but used a different color palette and design than C&M's official website. *Id.* ¶¶ 17-18. After learning that defendant Rosario Garnett was the domain registrant of the imposter website, C&M sent a cease and desist letter to Garnett demanding that she shut down the site. *Id.* ¶ 21. The letter was returned as undeliverable because the address listed did not exist. *Id.* On May 6, 2015, through an article published by GeekWire, C&M learned that Garnett not only owned the candmcafe.com domain, but also owned hundreds of other fake restaurant websites that were not authorized by or associated with the restaurants to which they appeared to belong. *Id.* ¶ 22; Ex. C. Further, it discovered that defendants Timm and Small also owned hundreds of domains for imposter restaurant websites. *Id.* ¶ 16.

Many of these fake websites outranked the restaurant's official sites in online search results due to savvy search engine optimization techniques; for example, some sites were connected to the Google local listings for the restaurants which caused them to be more prominently displayed in Google search results. *Id.* ¶ 24. The sites "leverage[d] multiple hosting providers but [were] all powered by a common infrastructure, pulling CSS, JavaScript and images from the same Amazon Web Services Cloudfront instance." *Id.* The websites all directed users to

place delivery orders through the OrderAhead App.  *Id.* ¶ 23.

The OrderAhead App, developed by Kinetic, allows users to order food from partner restaurants for pick up or delivery.  *Id.* ¶ 20.  When an order is placed on the OrderAhead App, a Kinetic driver goes to the restaurant and places that customer's order.  *Id.* ¶ 27.  Kinetic and the OrderAhead App were never affiliated with C&M cafe.  *Id.* ¶ 27.  Nevertheless, when C&M discovered the imposter website, it also learned that the OrderAhead App was allowing customers to order from C&M Cafe, displayed the restaurant's trademarks, service marks, and copyrights, and was using its logo and menu item names.  *Id.* ¶ 20.  The menu item prices listed on the OrderAhead App were higher than C&M's actual prices.  *Id.* ¶¶ 27-29.

C&M was not the only restaurant targeted.  Numerous other restaurants that had not agreed to partner with Kinetic, and had no knowledge of the OrderAhead App, nevertheless had their restaurants and menus featured on the OrderAhead App.  *Id.* ¶¶ 25-26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir.1989).

## DISCUSSION

A RICO claim must be based on: (i) the conduct of (ii) an enterprise that affects interstate commerce (iii) through a pattern (iv) of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). In addition, the conduct must be the proximate cause of harm to the victim. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Defendants raise a number of objections with C&M's RICO claim.

### I.     RICO ENTERPRISE

Defendants first contend C&M failed to meet RICO's "distinctness" requirements by failing to plead the existence of a distinct RICO "person" and "enterprise." Mot. at 1. In response, C&M argues that it has sufficiently alleged a RICO enterprise distinct from the RICO persons. Oppo. at 4. I agree.

Pursuant to RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). It may include "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). "To establish liability under § 1962(c) one must allege and prove the existence of two distinct entities:

4

(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001).

Defendants argue that C&M has failed to meet this distinctness requirement because it has alleged that the same defendants are the RICO enterprise and the RICO persons. Defendants correctly point out that a single individual or entity cannot be both a RICO person and the enterprise, as "an individual cannot associate or conspire with himself." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (1992). However, C&M's allegations, taken as a whole, do not put forward such a theory. C&M asserts that "Garnett, . . . Small, and . . . Timm acted on behalf of Kinetic in undertaking the misleading, deceptive, unlawful, business practices, and pattern of racketeering activity," SAC ¶ 37, and "[a]t all relevant times, Defendants were an 'enterprise' under 18 U.S.C. § 1961(4) because they were a group of individuals and a corporation." *Id.* ¶ 61. C&M alleges that Kinetic, Small, Timm, and Garnett associated together with the purpose of devising:

> an identity theft scheme to mislead restaurant patrols [sic] into believing that its unofficial sites were the official websites of C&M and the proposed Class during the Class Period for the purpose of (1) confuse C&M's and the proposed Class' existing and prospective customers into believing it was an official website, (2) divert those existing and prospective customers away from the Official Site, (3) fraudulently acquire more users for OrderAhead App, and (4) profit from usurping a delivery sale from C&M and the proposed Class by charging a different inflated price for its menu items.

*Id.* ¶ 42.

It is this association of Kinetic and the domain owners that C&M alleges is the "enterprise."

In contrast, C&M alleges that Kinetic, an individual member of the enterprise, is the RICO person. That C&M has alleged that Kinetic is both a RICO person and part of the RICO enterprise does not destroy distinctness. "Logically, one can associate with a group of which he is a member, with the member and the group remaining distinct entities…. Some individual defendants may also be identified as members of the alleged association-in-fact enterprise." *River City Markets*, 960 F.2d at 1462 (citation omitted); *Cedric Kushner Promotions Ltd.*, 533 U.S. at 163 ("The corporate owner/employee, a natural person, is distinct from the corporation itself.").

I conclude C&M has sufficiently alleged the existence of an "enterprise" for purposes of

1    RICO that is distinct from the RICO "person" of Kinetic.

2        The cases that defendants cite in support of their proposition that a defendant may not
3    simultaneously be a RICO "person" and part of a RICO "enterprise" are not applicable.  A number
4    hold that entities within a single corporate family cannot conspire with each other.  *Irving v.*
5    *Lennar Corp,* No. CIV S-12-2902013, U.S. Dist. LEXIS 47206, at *3, *41 (E.D. Cal. March 30,
6    2013) (no distinctness when individual corporate identities did not exist and parent company was
7    RICO "person" and "enterprise"); *Brannon v. Boatmen's First National Bank of Oklahoma*, 153
8    F.3d 1144, 1148 (10th Cir. 1998) (plaintiffs failed to plead a distinct enterprise as plaintiffs only
9    described a parent-subsidiary relationship); *In re Toyota Motor Corp. Unintended Acceleration*
10   *Mktg.*, 826 F. Supp. 2d 1180, 1199, 1202-03 (C.D. Cal. 2011) (distinctness requirement not met
11   where plaintiffs "allege that the four named, affiliated corporate Defendants are both the RICO
12   persons and the associated-in-fact enterprise") (quotations and alterations omitted).  These cases
13   do not apply as C&M has alleged that Kinetic formed an enterprise with the unaffiliated individual
14   domain owners.

15       Similarly, defendants' reliance on *Chi Pham v. Capital Holdings, Inc.* is misplaced.  No.
16   10-cv-0971-LAB (AJB), 2011 U.S. Dist. LEXIS 89047, at *18 (S.D. Cal. Aug. 9, 2011).  The *Chi*
17   *Pham* court concluded that the distinctness requirement was not met because plaintiffs had only
18   alleged that the defendants had engaged in a fraudulent enterprise but had failed to allege "a
19   defendant-the person or person—who is distinct from the enterprise whose business the defendant
20   is conducting."  *Id.* at *19.  In contrast, plaintiffs have alleged that Kinetic, the RICO person,
21   directed or conducted the business of the identity theft enterprise because it "exercised substantial
22   control over Garnet, Defendant ALAN SMALL, and Defendant CHRIS TIMM" and "[a]t all
23   relevant times, Garnett, Defendant ALAN SMALL, and Defendant CHRIS TIMM acted for on
24   behalf of Kinetic in undertaking the misleading, deceptive, unlawful, business practices, and
25   pattern of racketeering activity."  SAC ¶¶ 37, 39.

26       The defendants' cases do not alter my conclusion that a corporate person, engaged in and
27   directing an enterprise comprised of the corporation and unaffiliated individuals, satisfies the
28   distinctness requirement of RICO.  C&M has sufficiently pleaded a distinct associated-in-fact

enterprise and a RICO person.

## II. PARTICIPATION IN ENTERPRISE BY DEFENDANTS BYUN AND LEE

Defendants argue that C&M failed to plead facts that show defendants Byun or Lee "conducted" or "participated" in the affairs of the enterprise. Mot. at 8. C&M argues that it sufficiently pleaded participation by Byun and Lee in the RICO "enterprise" because C&M asserted that Byun and Lee are "directly involved with Kinetic Farm as co-founders, members, and managers of Kinetic Farm, the RICO enterprise." Reply at 6.

An allegation that an individual is affiliated with a RICO enterprise, on its own, is not sufficient to meet RICO's participation requirement. Under section 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to *conduct* or *participate*, directly or indirectly, *in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962 (emphasis added). In *Reves v. Ernst & Young*, the Supreme Court interpreted this to mean that a person "must have some part in directing [the enterprise's] affairs." 507 U.S. 170, 179 (1993). "In other words, mere association with an enterprise is not sufficient, but rather, the individual must have participated in some element of direction [of the enterprise]." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).

C&M has not alleged facts that indicate Byun and Lee directed the affairs of the alleged enterprise. While it has alleged that Byun and Lee are co-founders, members, and managers of Kinetic, SAC ¶¶ 4-5, an alleged RICO person within the RICO enterprise, "mere association with an enterprise is not sufficient." *Walter*, 538 F.3d at 1249.

C&M argues that as co-founders and managers of Kinetic, Byun and Lee are liable for the acts of, not just Kinetic, but also the enterprise. Oppo. at 6-7. C&M cites *Zazzali v. Ellison*, in which the Idaho district court concluded that plaintiffs sufficiently pleaded participation by Ellison, the co-founder and general counsel of a dissolved real estate company, by alleging that he had reviewed and signed off on certain documents that were key to an alleged fraudulent scheme. 973 F.Supp.2d 1187, 1201 (D. Idaho 2013). But *Zazzali* is clearly distinguishable as the *Zazzali* plaintiffs did not rely only on Ellison's position of co-founder and general counsel to demonstrate

participation, but instead alleged that he reviewed and approved documents key to the fraudulent scheme. *Id.* C&M alleges no such similar facts.

C&M also cites Delaware Code Ann. Tit. 6 § 18-402, which states that members of an LLC are responsible for the management affairs of the business, to show that Byun and Lee participated in the affairs of Kinetic Farm and the enterprise. Oppo. at 7. But C&M has not alleged that Kinetic Farm is an LLC, stating only that it is a "Corporation," SAC ¶ 3, and Kinetic Farm Inc.'s name, which does not include "LLC" or "Limited Liability Company", suggests that it is not organized as an LLC. Delaware Code Ann. Tit. 6 § 18-102 ("The name of each limited liability company as set forth in its certificate of formation: (1) Shall contain the words 'Limited Liability Company' or the abbreviation 'L.L.C.' or the designation 'LLC.' ").

Finally, at the hearing, C&M argued that as corporate stock holders, officers, and directors of a start-up, Byun and Lee exercise a significant amount of control over Kinetic and therefore, it can be presumed that they participated in or directed affairs of the enterprise. But C&M does not allege or explain in its complaint that Kinetic is a start-up, and does not allege that Byun and Lee were corporate stockholders, officers, and directors. It is possible that C&M could allege facts about the size and history of Kinetic and the structure of decision-making at the corporation that would allow an inference that Byun and Lee must have participated in the alleged enterprise. But C&M has not alleged any such facts. *Reves* and *Walter* require that plaintiffs allege facts that show a means to participate in the operation or management of the enterprise. *Reves*, 507 U.S. at 179; *Walter*, 538 F.3d at 1249. As written, C&M's SAC alleges only that Byun and Lee were associated with the alleged enterprise. This is insufficient.

C&M has failed to allege any facts showing participation by defendants Byun and Lee in the purported RICO enterprise. The RICO claim is DISMISSED against Byun and Lee.

### III.     MAIL OR WIRE FRAUD

Defendants contend that C&M failed to plead mail and wire fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure, arguing that C&M "indiscriminately lump[ed] together all Defendants, without regard to any specific fraudulent statement or specific intent to defraud." Mot. at 9. Plaintiff C&M argues that it has pleaded

sufficient facts to meet 9(b)'s requirements and to give defendants notice of the allegations against them. Oppo. at 7.

"The elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (citation omitted); *see also* 18 U.S.C. § 1343. A RICO wire fraud claim must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) (citations omitted). Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* at 553. While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally. *Id.* at 554.

C&M has pleaded sufficient facts to satisfy the heightened pleading standard under Rule 9(b). C&M provides a number of details about the alleged wire fraud scheme. It alleges that Kinetic violated section 1343 (wire fraud) "through its use of interstate wires and other interstate electronic media (i.e., the Internet, the Imposter Site, the unofficial sites, and the OrderAhead App)." SAC ¶ 48. Specifically, it alleges that defendants engaged in an identity theft scheme in order to acquire more customers for Kinetic's OrderAhead App, *id.* ¶¶ 16-17, that they did this by creating imposter websites that displayed trademarks, service marks, and copyrights of the logo and menu items of real restaurants, *id.* ¶ 19, that Kinetic diverted customers away from the legitimate sites through search engine optimization techniques and by promoting free delivery for first orders, *id.* ¶¶ 20, 24, and that Kinetic monetized its fraud by charging customers 15 percent more for the same menu and charging for delivery after the first "free" delivery, *id.* ¶¶ 20, 29. C&M also alleged that it learned of the imposter website on April 22, 2016 and took steps to get it shut down, but discovered that the registered domain owner's address did not exist. *Id.* ¶¶ 16, 21. It outlined the various roles of the defendants, alleging that Timm, Small, and Garnett owned hundreds of domains for the imposter restaurant websites, *id.* ¶¶ 22-23, and that Kinetic exerted "substantial control" over these defendants and directed their activities, *id.* ¶ 40. All of these allegations together give defendants clear notice of the circumstances surrounding their

participation in the alleged fraudulent activity.

C&M also made sufficient general allegations concerning defendants' state of mind by alleging that their scheme was meant to:

> (1) confuse C&M's and the proposed Class' existing and prospective customers into believing it was an official website, (2) divert those existing and prospective customers away from the Official Site, (3) fraudulently acquire more users for OrderAhead App, and (4) profit from usurping a delivery sale from C&M and the proposed Class by charging a different inflated price for its menu items."

*Id.* ¶ 48.

C&M has alleged sufficient facts to show the formation of a scheme to defraud, the factual circumstances of the fraud itself, and allegations showing the defendants' state of mind. It has met the heightened pleading standard of Rule 9(b).

## IV. PROXIMATE CAUSATION OF LEGALLY COGNIZABLE DAMAGE

Defendants contend that C&M failed to allege that its purported injuries were "proximately caused" by defendants' alleged unlawful actions. Mot. at 10. In response, C&M argues that it has suffered four injuries that were proximately caused by defendant's fraudulent activities: (1) loss of profit; (2) misuse of intellectual property; (3) harm to its business or property interest; and (4) legal costs. Oppo. at 20. C&M has adequately alleged that it suffered injuries that were proximately caused by the defendants' alleged RICO conduct.

In order to have RICO standing, a plaintiff must have suffered an injury that was proximately caused by the alleged RICO violation. 18 U.S.C. § 1964 ("Any person injured in his business or property *by reason of* a violation of section 1962… may sue therefor …shall recover threefold the damages he sustains….") (emphasis added); *see also Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 266 (1992) (rejecting an expansive reading of "by reason of"). The RICO violation must not only be the "but for" cause of his injury but proximate cause as well. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-57 (2006) (citation omitted). The Ninth Circuit has clarified three factors that are relevant in evaluating whether the defendant proximately caused the alleged injury: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to

ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1055 (9th Cir. 2008) (citation omitted).

### A. Loss of Profit

C&M alleges that it lost profits as a proximate result of defendants' RICO activities. It is a direct victim of the alleged identity theft scheme because the enterprise specifically targeted C&M by creating the imposter website, displaying C&M's trademarks and menu, and diverting deliveries away from C&M's direct delivery ordering system and to the OrderAhead App. *Cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (1991) (injury to plaintiff was too remote where competitor engaged in a scheme to avoid paying New York sales tax that allowed him to charge lower prices to customers and gain a competitive advantage).

Further, it is likely that the court will be able to ascertain the amount of the "plaintiff's damages attributable to defendant's wrongful conduct." *Newcal Indus.*, 513 F.3d at 1055 (citation omitted). Measuring C&M's purported injury would not require speculative calculations of damages. C&M alleges that defendants diverted delivery sales through its OrderAhead App. SAC ¶ 20. The court could readily assess the amount of C&M deliveries placed through the OrderAhead App and determine the amount of profit lost by these diverted delivery sales. *Cf. Anza* 547 U.S. at 459 (damages were speculative where the court would be required to determine the portion of defendants' price drop attributable to racketeering activity and then determine plaintiff's lost sales due to that "relevant part of the price drop").

Lastly, it seems highly improbable that the court would be required to adopt complicated rules to apportion damages in order to avoid the risk of multiple recoveries. *See Newcal Indus.*, 513 F.3d at 1055. C&M and the other proposed class members are direct victims of defendants' conduct. A recovery by C&M and the class of its lost delivery sales would not affect other parties or result in multiple recoveries for the same conduct.

I conclude C&M has adequately pleaded that defendants' purported activity was a proximate cause of C&M's lost profits.

### B. Misuse of C&M's Intellectual Property

C&M also alleges that it suffered injuries from copyright and trademark infringement as a result of the RICO activity. SAC ¶ 16. Misuse of intellectual property can suffice to confer standing for a RICO claim. *See, e.g.*, *Bryant v. Mattel, Inc.*, No. 04–9049, 2010 WL 3705668, at *11 (C.D. Cal. Aug. 2, 2010); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 100 (D.D.C. 2015). Moreover, under the RICO Act, racketeering activity includes "criminal infringement of a copyright." 18 U.S.C. § 1961(1). Given this, it follows that misuse and infringement of trademarks and copyrights can give rise to a legally cognizable injury under RICO. Oppo. at 9. Here, defendants' imposter websites displayed C&M trademarks, service marks, and copyrights. SAC ¶ 16. C&M has alleged that this misuse confused consumers who were likely to believe that they were ordering from C&M's official website when they were not. *Id.* ¶ 42. It has alleged a plausible intellectual property injury.

### C. Business or Property Interest

C&M asserts that defendants' RICO activity proximately caused injury to C&M's business or property as it "suffered reputation harm because Kinetic Farm's errors with delivery of C&M's food are attributed to C&M, not Kinetic Farm." Oppo. at 9. "[T]he Ninth Circuit [has] concluded that interference with business relations [is] sufficient to allege injury to a business or property interest. *Planned Parenthood Fed. Of America, Inc. v. Center for Medical Progress*, ---F. Supp.3d ---, 2016 WL 5946858, at *4 (N.D. Cal. 2016) (citing *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005)). However, harm to reputation is generally not considered an injury to "business or property" under RICO. *See, e.g.*, *Hamm v. Rhone–Poulenc Rorer Pharms.*, 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); *see also Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086–87 (9th Cir. 2002) ("To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest.").

While C&M has argued that it suffered reputation harm, its allegations show a more direct injury to its business interests. It has alleged that defendants inserted themselves between C&M and

the consumer, causing C&M to improperly take the blame for any order mistakes or delivery delays and causing consumers to believe C&M was charging them more for its menu items than it actually was. This is a direct injury to C&M's property interest in its business, not just its reputation. I conclude that C&M adequately pleaded an injury to its property interest.

### D. Attorney Fees

Lastly, C&M contends that it accrued legal fees because it was forced to send a cease-and-desist letter to defendant Garnett and that this injury was also proximately caused by the defendants' racketeering activity. Oppo. at 9-10. "[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation." *Chevron Corp. v. Donziger*, No. 14-08261(L), 2016 WL 4173988, at *51 (2nd Cir. 2016) (internal quotation marks and citation omitted). C&M accrued legal fees in the course of preparing and sending a cease and desist letter to defendant Garnett as a direct response to the unlawful imposter website. SAC ¶ 21. C&M has adequately pleaded that it was injured in that it sustained legal costs as a direct result of defendants' racketeering activities.

### CONCLUSION

C&M has adequately pleaded the existence of a distinct RICO enterprise, mail and wire fraud, and proximate causation of its injuries. It failed to adequately plead the participation of defendants Byun and Lee in the RICO "enterprise." I GRANT defendants' motion to dismiss the RICO claim with regards to defendants Byun and Lee and DENY the motion to dismiss with regards in all other respects. C&M will have 20 days leave to amend.

**IT IS SO ORDERED**.

Dated: November 18, 2016



WILLIAM H. ORRICK
United States District Judge